UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| **PHELPS KY OPCO, LLC d/b/a GOOD SHEPHERD HEALTH AND REHABILITATION CENTER** <br><br> and <br><br> **PLAINVIEW HEALTH CARE PARTNERS LLC,** <br><br> Plaintiffs, <br><br> v. <br><br> **DARLENE WORKING,** *Administratrix of the Estate of Lorine Blankenship*, <br><br> Defendant. | CIVIL NO. 6:26-cv-23-KKC <br><br><br> **ORDER & OPINION** |

Defendant Darlene Working is the Administratrix of Lorine Blankship's estate. On July 9, 2024, Working filed suit against Plaintiffs Phelps KY Opco LLC d/b/a Good Shepherd Health and Rehabilitation Center ("Good Shepherd"), Plainview Health Care Partners, LLC ("Plainview"), and others[1] in state court, alleging claims of negligence and a claim for wrongful death arising from Blankenship's residency at Good Shepherd. On February 11, 2025, Good Shepherd and Plainview filed suit in federal court. (R. 1.) They now seek to compel arbitration and enjoin the state court action based on an alternative dispute resolution agreement executed during

---

[1] Phelps KY Holdco, LLC; Phelps KY Propco, LLC; Plainview Group TN, LLC; David Herskowitz; Jeffrey Arem; Isaac Moskowitz; Pallaki Ravi, M.D.; and Angie Hurley, in her capacity as Administrator of Good Shepherd.

1

Blankenship's stay at Good Shepherd. (R. 10.) Conversely, Working has moved to dismiss this action. (R. 7.) Fully briefed, the motions are ripe for review.

## I. Background

On or about May 6, 2022, Blankenship was admitted to Good Shepherd, a skilled nursing and rehabilitation facility in Phelps, Kentucky. As part of the admissions process, Blankenship signed Good Shepherd's Agreement for Alternative Dispute Resolution (ADR Agreement), which states that "[a]ll claims based in whole or in part on the same incident, transaction, occurrence or course of care and services provided by Facility to Resident shall be mediated and, as applicable, arbitrated in one proceeding." (R. 10-2 at 2.) The ADR Agreement specifically encompasses claims of negligence, medical malpractice, wrongful death, and breach of resident's rights, as well as "any action based in any way on a claim arising from a State or Federal Statute or regulation, or under any other legal rights the Resident or Facility may have against the other." (*Id.* at 1.) The ADR Agreement provides that acceptance of its terms is not a condition of admission or continued residence in the facility. (*Id.*) The Agreement also states that it shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (*Id.* at 3.)

## II. Motion to Dismiss (R. 7)

### A. Subject Matter Jurisdiction under Rule 12(b)(1)

Working argues that this Court does not have subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Subject matter jurisdiction is a threshold determination that the Court must make before proceeding further. *See*

2

*United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993). It is well-settled that the Federal Arbitration Act ("FAA") does not provide an independent basis for federal jurisdiction. 9 U.S.C. § 4; *see Vaden v. Discover Bank*, 566 U.S. 49, 59 (2009). Rather, petitioners seeking to compel arbitration under the Act must assert an independent source of subject matter jurisdiction. *Vaden*, 556 U.S. at 59; *Ford v. Hamilton Invs. Inc.*, 29 F.3d 255, 257-58 (6th Cir. 1994).

Working asserts that the question is not whether diversity jurisdiction exists in the action filed in this Court, but whether diversity jurisdiction exists in the underlying state court action. In other words, Working insists that the Court should "look through" to the complaint in the underlying state court action to determine whether complete diversity actually exists. (R. 7-1 at 5-9.)

The Supreme Court has adopted the "look through" approach to *federal question* jurisdiction, *see Vaden*, 566 U.S. at 62, but has not yet addressed whether the same applies to *diversity* jurisdiction. The Sixth Circuit has not addressed this issue, either.

This Court and its sister court, however, have considered and rejected the argument that the "look through" approach applies to diversity jurisdiction. *See Boyd Nursing & Rehab, LLC v. Wells*, 624 F.3d 705, 713 (E.D. Ky. 2022); *Brookdale Senior Living Inc. v. Stacy*, 27 F.3d 776 (E.D. Ky. 2014) (citing *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 490-91 (8th Cir. 2010)); *GGNSC Stanford, LLC v. Johnson*, 5:16-CV-12-KKC, 2016 U.S. Dist. LEXIS 119411 (Sept. 2, 2016). The undersigned continues to find that the "look through" approach applies

3

only in cases invoking the court's federal-question jurisdiction. Accordingly, in determining whether diversity jurisdiction exists here, the Court will look at the parties named in the complaint and any indispensable parties under Federal Rule of Civil Procedure 19.

Whether diversity jurisdiction exists between the parties named in the complaint is not at issue. Instead, Working argues that Good Shepherd and Plainview failed to join an indispensable party who would destroy diversity if joined. *See* Fed. R. Civ. P. 12(b)(7). Specifically, Working contends that Good Shepherd and Plainview failed to join Angie Hurley, the administrator of Good Shepherd, who was named as a defendant in the state court complaint. There is no dispute that the administrator is a Kentucky citizen and, thus, her joinder would destroy this Court's diversity jurisdiction.

Under Rule 19, the Court must conduct a three-step analysis to determine "whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). First, the Court must determine whether a party not joined is necessary under Rule 19(a). *Id*. Second, if the party is necessary, the court must determine whether joinder is feasible, considering whether the party is subject to personal jurisdiction and if joinder will destroy the court's subject-matter jurisdiction. *Id*. Third, if joinder will destroy subject matter jurisdiction, the court must examine "whether in equity and good conscience the action should proceed" without the non-joined party, i.e. whether the party is "indispensable." *Id*. If an indispensable party cannot be feasibly joined, the action

4

must be dismissed. If the party is not indispensable, the action may proceed in that party's absence. *See GGNSC Vanceburg, LLC v Hanley*, 2014 U.S. Dist. LEXIS 42355 (E.D. Ky. Mar. 28, 2014).

For purposes of this opinion, the Court will assume that Hurley is a necessary party. Turning to step two—feasibility of joiner—joining her in this action will destroy diversity jurisdiction. The Court must determine whether, in equity and good conscience, the action may proceed in Hurley's absence or should be dismissed. Fed. R. Civ. P. 19(b). The Court considers the following factors in resolving this issue.

(1) The extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties.

(2) The extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures.

(3) Whether a judgment rendered in the person's absence would be adequate.

(4) Whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id*.

Working contends that Hurley is indispensable in this action to enforce the arbitration agreement because she is a beneficiary of the ADR Agreement and because "the actions of Petitioners and administrator are intertwined in Defendant's claims in the underlying controversy[.]" (R. 7-1 at 14). She argues that the present

5

case would lead to duplicative litigation and inconsistent legal conclusions. (*Id*. at 15-16 (internal citations omitted).)

The Sixth Circuit expressly rejected the argument that duplicative litigation and potentially inconsistent legal conclusions over an arbitration agreement are grounds for finding a party indispensable. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202-03 (6th Cir. 2001) ("[T]he possibility of having to proceed simultaneously in both state and federal court is a direct result of [the defendant's] decision to file suit naming [the plaintiff] and [the non-joined party] in state court rather than to demand arbitration under the [parties'] Agreement.") Working's concern that this Court and the state court will reach conflicting interpretations of the ADR Agreement does not constitute the type of prejudice necessary to support the finding that the administrator is an indispensable party. *Id*.

There is no indication that any judgment rendered in Hurley's absence will be inadequate. Additionally, the possibility of Working arbitrating her claims against the corporate parties while proceeding with her claims against Hurley in state court does not affect the adequacy of any judgment between Working and the corporate parties. *See id*. at 205. Finally, while the state court presents an alternate forum for Good Shepherd and Plainview to seek enforcement of the arbitration agreement, the "existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *Id*. (internal citation omitted). Important policy considerations underlying the FAA require that federal courts remain available to enforce arbitration agreements in diversity cases. *Id*. Accordingly, the Court

concludes that Hurley is not an indispensable party to this action and that diversity jurisdiction exists here.

## B. *Colorado River* Abstention

Working argues that, even if this Court does have jurisdiction over this action, it should abstain from exercising it under the *Colorado River* doctrine. "In certain 'exceptional' circumstances, . . . a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Brookdale Senior Living, Inc. v. Stacy*, 27 F. Supp. 3d 776, 785 (quoting *PaineWebber*, 276 F.3d at 206). But "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," and this "extraordinary and narrow exception" is only justified when it "would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813.

Before the *Colorado River* doctrine may be applied, the Court must determine whether the concurrent state and federal actions are actually parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). While "exact parallelism" is not required, the two proceedings must be "substantially similar." *Id.* at 340. The two actions are not parallel if the claims presented in this Court are not presented in the state court action. *Preferred Care, Inc. v. Barnett*, 5:16-CV-372-KKC, 2017 U.S. Dist. LEXIS 21758, at *3 (E.D. Ky. Feb. 16, 2017).

There is no evidence in the record before this Court that either party has moved to compel arbitration in the state court action. Nor is there any evidence indicating that either party has asked the state court to determine whether the arbitration agreement is valid and, if so, whether the agreement requires that Working's state court claims be arbitrated. Nothing in the record before this Court indicates that any of the parties to this action have requested the state court to make any determinations regarding the arbitration agreement or the arbitrability of Working's state-law claims. Accordingly, the Court cannot find that this action and the state court action are parallel.

Further, even if a party had moved the state court to compel arbitration, the Court cannot find abstention warranted. "[T]he decision to dismiss a federal action because of a parallel state court action rests 'on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

Courts consider eight factors when determining whether abstention under *Colorado River* is necessary. *PaineWebber*, 276 F.3d at 206 (citing *Romine*, 160 F.3d at 340-41). The factors are as follows:

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties;
> (3) avoidance of piecemeal litigation; . . .

> (4) the order in which jurisdiction was obtained[;] . . .
>
> (5) whether the source of governing law is state or federal;
>
> (6) the adequacy of the state court action to protect the federal plaintiff's rights;
>
> (7) the relative progress of the state and federal proceedings; and
>
> (8) the presence or absence of concurrent jurisdiction.

*Id.* (citing *Romine*, 160 F.3d at 340-41).

In *Colorado River*, the paramount concern was whether there was a "clear federal policy evince[ing] . . . the avoidance if piecemeal adjudication" within the statutory scheme at issue. *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009). The Sixth Circuit has made clear that, with respect to the Federal Arbitration Act, there is not such a policy. *Id.* The purpose of the FAA is to enforce parties' private agreements; this concern predominates, even if piecemeal litigation results. *Id.* (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Accordingly, the most important factor in determining whether to exercise this Court's jurisdiction weighs in favor of doing so.

Other factors counsel against abstention or are neutral. There is no indication that the state court has assumed jurisdiction over any property. There is also no indication that the federal forum is less convenient to the parties than the Pike Circuit Court. And while Working filed her action in state court prior to Good Shepherd and Plainview filing the present action, there is no evidence in this record that the state court has been asked to address the arbitration issue at all.

While the Court recognizes that the state court is an adequate venue to resolve the question of whether Working's state court claims must be arbitrated, the source

9

of governing law also weighs against abstention because the FAA is the basis of interpreting the disputed arbitration agreement. *See PaineWebber*, 276 F.3d at 208-09. While state law also is implicated with respect to the validity of the arbitration agreement, "the presence of federal law issues must always be a major consideration weighing against surrender of a federal jurisdiction in deference to state proceedings." *Preferred Care, Inc. v. Howell*, 2016 U.S. Dist. LEXIS 63392, 187 F. Supp. 3d 796, 806 (quoting *PaineWebber*, 276 F.3d at 208).

Considering all of these factors, the undersigned finds no exceptional reason for this Court to abstain from exercising its jurisdiction over this action.

### C. Enforceability of the ADR Agreement under Rule 12(b)(6)

Working next argues that this action should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Good Shepherd and Plainview bring this action under the FAA, which provides that "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The statute further defines "commerce" to include "commerce among the several States." 9 U.S.C. § 1. The phrase "involving commerce" has been interpreted as "the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted).

Working argues that the action must be dismissed because the ADR Agreement does not evidence a transaction involving interstate commerce and, thus, fails to meet the standards for enforcement under FAA. But agreements to arbitrate disputes involving the provision of long-term health care evidence a transaction involving interstate commerce. *See, e.g., GGNSC Stanford, LLC v. Johnson*, 5:16-CV-12-KKC, 2016 U.S. Dist. LEXIS 119411, *16 (Sept. 2, 2016); *Golden Gate Nat. Senior Care, LLC v. Addington*, 14-CV-327-JMH, 2015 U.S. Dist. LEXIS 44107, at *22 (E.D. Ky. Apr. 3, 2015) ("Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control."). Accordingly, Working's argument that the ADR Agreement is unenforceable because it does not evidence a transaction involving interstate commerce fails.

Working also attempts to argue that the ADR Agreement is unenforceable because it is unconscionable. The doctrine of unconscionability is a narrow exception to the general rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who has an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). An unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Id*. at 342 (quoting *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978)).

There are two forms of unconscionability. Procedural unconscionability "pertains to the process by which an agreement is reached." *Id*. at 341, n. 22. Such

11

complaints might relate to the size of the print, unclear language, and concerns raised regarding contracts of adhesion. *Id.* "Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Id.* (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

Working contends that the ADR Agreement is part of a "mass-produced, boiler-plate, pre-printed document, likely presented to the Defendant within a lengthy stack of admissions paperwork." (R. 7-1 at 21.) Even so, the ADR Agreement is marked with large, bold type which reads "Alternative Dispute Resolution Agreement." (R. 10-2 at 1.) Halfway down the first page of the agreement in bold, capital, underlined letters, a disclaimer appears, indicating that by signing the agreement, the parties "waiv[e] their right to a trial by judge or jury." *Id.* Further, on the signature page, in bold, capital letters, the parties are cautioned that the agreement waives their constitutional right to have disputes decided in court. *Id.* at 5. It also states that the parties read and understood the terms of the agreement and entered into the agreement by choice. *Id.* Simply because the ADR Agreement may have been part of a lengthy admissions packet does not render it procedurally unconscionable. *See Energy Home, Div. of So. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 836 (Ky. 2013). Further, the ADR Agreement will not be invalidated because of uneven bargaining power, without more, or because it is the product of an "old-fashioned bad bargain." *See id.* (citing *Schnuerle v. Insight Comms. Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012)); *Conseco Fin. Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). Accordingly,

this Court has no grounds to find the arbitration agreement substantively or procedurally unconscionable.

For all these reasons, Working's motion to dismiss will be denied.

### III. Motion to Compel Arbitration (R. 10)

As for Good Shepherd and Plainview's motion to compel arbitration, the Court must determine the following.

(1) Whether the parties agreed to arbitrate.

(2) The scope of the parties' agreement to arbitrate.

(3) If federal statutory claims are asserted, whether Congress intended for those claims to be non-arbitrable.

(4) If the Court concludes that some, but not all, of the claims in an action are arbitrable, it must determine whether to stay the remainder of the proceedings pending arbitration.

*See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Good Shepherd and Plainview concede that the ADR Agreement concerning the wrongful death claim is not binding on wrongful death beneficiaries, including Working. (*See* R. 21 at 4 (citing *Richmond Health Facilities v. Nichols*, 811 F.3d 192 (6th Cir. 2016); *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), *cert. denied*, 569 U.S. 954 (2013)). Thus, the Court will not evaluate the arbitrability of the wrongful death claims but proceed in evaluating the arbitrability of the other claims in this action.

The parties agreed to arbitrate. An admissions representative for Good Shepherd and Lorine Blankenship signed the ADR Agreement. (*See* 10-2 at 5.) The "Binding Effect" clause of the ADR Agreement states that it is binding on the parties, including "any third party non-signatory to this ADR Agreement including any parent, spouse, child, guardian, executor, administrator, legal representative, beneficiary, or heir of the Resident." (*Id*. at 4.) Working is administrator to Blankenship's estate.

The ADR Agreement provides that it broadly applies to "any and all legal controversy, dispute, or disagreement or claim of any kind between the Facility and Resident arising from or relating in any way to this ADR Agreement or the Resident's stay at the Facility." (*Id*. at 1.) This includes claims based on negligence and tort "against the Facility, including but not limited to its employees, agents, officers, directors, management company, building owner, landlord, parent company, subsidiary or affiliate of Facility, as well as claims brought by the Facility." (*Id*.) The claims at issue include claims of negligence, medical negligence, corporate negligence, and corporate manipulation of funds. (R. 1-1.) Clearly, the scope of the arbitration clause of the ADR Agreement was intended to apply to these claims.

Although the FAA requires a federal court to stay its own proceedings when arbitration is required, it does not specifically authorize federal courts to stay pending state court proceedings. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). Rather, the federal court's authority to enjoin state court proceedings is derived from the Anti-Injunction Act, 28 U.S.C. § 2283. The Sixth Circuit has

14

determined that a district court's injunction of state court proceedings after compelling arbitration falls within the exception of the Anti-Injunction Act necessary to protect or effectuate the district court's judgments. *Great Earth*, 288 F.3d at 894. Because the Court has determined that the parties entered into a binding arbitration agreement, it is necessary to enjoin Working from pursuing the claims covered by the Agreement in state court.

Additionally, despite the fact that the ADR Agreement does not bind the wrongful death beneficiaries, because the wrongful death claim is "necessary . . . to protect or effectuate" the Court's enforcement of the Agreement and compelling arbitration of the remaining claims, the Court will stay the wrongful-death claim pending arbitration of the remaining claims. 28 U.S.C. § 2283; *see Leafguard of Kentuckiana, Inc. v. Leafguard of Kentucky, LLC*, 138 F.Supp.3d 846, 859 (E.D. Ky. Oct. 9, 2015) (internal citations omitted) (explaining that the Supreme Court "has recognized that district courts have the discretion to stay claims among non-arbitrating parties pending the outcome of arbitration.").

Accordingly, the motion to compel arbitration and stay the state court action will be granted.

### IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

(1) Working's Motion to Dismiss (R. 7) is **DENIED**.

(2) Good Shepherd and Plainview's Motion to Compel Arbitration and Stay the Court Action (R. 10) is **GRANTED**.

(3) Working **SHALL** submit her claims currently pending in Pike Circuit Court, Pike County, Kentucky, Civil Action No. 24-CI-00697 (the "State Court Action"), aside from the wrongful death claim, to arbitration.

(4) Working is **ENJOINED** from pursuing her claims, including the wrongful death claim, in the State Court Action or from otherwise proceeding outside of the arbitral forum specified in the ADR Agreement until the conclusion of the ordered arbitration.

(5) This matter is **STAYED** pending the conclusion of the ordered arbitration. The parties are directed to file Joint Status Reports regarding the arbitration proceeding **every thirty days** until the matter is complete.

This 8th day of January, 2026.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge